IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00056-MSK-BNB

MELVIN LEE DAVIS,

       Petitioner,

v.

R. WILEY,

       Respondent.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Doc. #6, filed 2/12/2007] (the "Application") by Melvin Lee Davis (the "petitioner"). The district judge issued an Order to Show Cause why the Application should not be granted. For the following reasons, I respectfully RECOMMEND that the Application be GRANTED IN PART to require the Bureau of Prisons to recalculate the petitioner's sentence in a manner consistent with this Recommendation, and be DENIED in all other respects.

## I.  BACKGROUND

The petitioner is incarcerated by the Bureau of Prisons ("BOP") at the United States Penitentiary-Administrative Maximum in Florence, Colorado ("ADX"). Previously, in October 2005, the petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina alleging that he had served his entire sentence and that he was being held past his release date. *Civil Action No. 05-cv-02421-MSK,,* Doc. #1. The case was transferred to this Court in November 2005. Id. That petition was

dismissed without prejudice because the petitioner had not exhausted his administrative remedies.  Id. at Doc. #16.

The petitioner filed his initial Application in this case (the "Initial Application") on December 26, 2006 [Doc. #3].  He was ordered to resubmit the application on the Court's approved form [Doc. #2].  He resubmitted an application on the Court's form on February 12, 2007 [Doc. #6] (the "Application") .

The Application sets forth three claims.  In Claim One, the petitioner alleges that the Commonwealth of Virginia has lodged an illegal detainer against him.  In Claim Two, he alleges that the United States Parole Commission ("USPC") erred when it took away his parole "street time."  In Claim Three, the petitioner claims that his release date was improperly changed from July 2005 to November 2017.  The petitioner alleges that he has exhausted all available prison remedies.

## II.  ANALYSIS

### A.  Exhaustion

The respondent asserts that the Application must be dismissed because the petitioner has not properly completed the BOP's administrative remedy process.  *Response to Order to Show Cause Regarding Application Pursuant to 28 U.S.C. § 2241* (the "Response"), pp. 7-9.  Prior to filing an application for writ of habeas corpus under section 2241, a prisoner must exhaust his available remedies.  Montez v. McKinna, 208 F.3d 862, 866 (10th Cir.2000) (stating that "[a] habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254"); Williams v. O'Brien, 792 F.2d 986 (10th Cir. 1986) (dismissing habeas

petition brought pursuant to § 2241 for failure to exhaust Bureau of Prisons' administrative remedies regarding sentence computation).

BOP regulations require an inmate first to attempt an informal resolution of his complaint. 28 C.F.R. § 542.13. If that effort is unsuccessful, an inmate then may seek formal review by the Warden of an issue which relates to any aspect of his confinement. Id. at §§ 542.10, 542.14. Thereafter:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15.

Here, the petitioner submitted his Informal Resolution Form on July 26, 2006. *Initial Application* [Doc. #3], p. 50.[1] It was denied on July 27, 2006. Id.

The petitioner submitted a Request for Administrative Remedy to Warden Wiley on July 31, 2006. Id. at p. 31. Warden Riley denied the request on August 16, 2006. Id. at p. 49.

---

[1]The petitioner did not attach this document to his Application; it is attached to the Initial Application. The attachments to the Application are not in any particular order. The attachments to the Initial Application are somewhat ordered and are more complete with regard to the exhaustion issue. Therefore, I cite to the Initial Application's attachments. Because the petitioner did not consecutively paginate the Initial Application, the Application, or the attachments, I cite to the page numbers of those documents as assigned by the Court's docketing system.

On August 23, 2006, the petitioner submitted a Regional Administrative Remedy Appeal. Id. at p. 27. The Regional Office issued a written statement acknowledging that it received the petitioner's Regional Administrative Remedy Appeal on August 28, 2006, and that its response was due on September 27, 2006. Id. at p. 29. On October 3, 2006, the Regional Office issued a notice stating that it needed additional time to respond to the petitioner's appeal and that its response would now be due on October 27, 2006. Id. at p. 30. The Regional Office did not issue its response until December 4, 2006. Id. at p. 18. The petitioner did not receive a copy of the response until December 20, 2006. Id. at p. 22.

On November 15, 2006, the petitioner submitted a Central Office Administrative Remedy Appeal. Id. at p. 23. He stated that his counselor told him to proceed to the central appeal level because the Regional Office had not responded to his regional appeal. Id. In a Rejection Notice dated November 30, 2006, the Central Office rejected his appeal because it was not in the proper form and because it did not include a copy of the regional appeal and the Regional Office's response to that appeal. Id. at p. 26. The petitioner was given 15 days from the date of the rejection notice to resubmit his central appeal in proper form. Id.

On December 20, 2006, the Central Office received the petitioner's resubmitted appeal. *Response*, Ex. A, ¶ 32. The resubmitted appeal was rejected because the petitioner failed to provide a copy of the regional appeal "and/or" the Regional Office's response. Id. He was again instructed to resubmit the appeal in proper form within 15 days of the date of the rejection notice. Id. The petitioner did not resubmit his appeal to the Central Office.

The petitioner asserts that he exhausted his administrative remedies because under 28 C.F.R. §542.18, his regional appeal was deemed denied when the Regional Office failed to

respond to it on October 27, 2006.  Therefore, he was not under any obligation to submit a copy

of the response to his regional appeal.

Section 542.18, 28 C.F.R., states:

> If accepted, a Request or Appeal is considered filed on the date it
> is logged into the Administrative Remedy Index as received.  Once
> filed, response shall be made by the Warden or CCM within 20
> calendar days; by the Regional Director within 30 calendar days;
> and by the General Counsel within 40 calendar days.  If the
> Request is determined to be of an emergency nature which
> threatens the inmate's immediate health or welfare, the Warden
> shall respond not later than the third calendar day after filing.  If
> the time period for response to a Request or Appeal is insufficient
> to make an appropriate decision, the time for response may be
> extended once by 20 days at the institution level, 30 days at the
> regional level, or 20 days at the Central Office level.  Staff shall
> inform the inmate of this extension in writing.  Staff shall respond
> in writing to all filed Requests or Appeals.  *If the inmate does not
> receive a response within the time allotted for reply, including
> extension, the inmate may consider the absence of a response to be
> a denial at that level*.

(Emphasis added).

The response to the petitioner's regional appeal was due on October 27, 2006.  The

response was not issued until December 4, 2006.  Thus, under section 542.18, the petitioner was

entitled to consider the absence of a regional response to be a denial at the regional level.

Therefore, the Central Office erred when it required, in part, submission of the Regional Office

response.

However, the Central Office also rejected the petitioner's first central appeal because he

submitted more than one continuation page with his appeal and because he did not provide a

copy of his Regional Office Administrative Remedy Appeal.  *Initial Application*, p. 23-26.

Appeals to the Central Office shall be "accompanied by one complete copy or duplicate original

of the institution and regional filings and their responses."  28 C.F.R. § 542.15(b)(1).  In addition, "[a]n inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2 " x 11") continuation page."  Id. at § 542.15(b)(3).

The Central Office "may reject and return to the inmate without a response . . . an Appeal that is obscene or abusive, or does not meet any other requirement of this part."  Id. at § 542.17(a).  Thus, the Central Office did not err when it rejected the petitioner's first appeal because he submitted more than one continuation page.  In addition, to the extent the petitioner was in possession of a copy of his Regional Office Administrative Remedy Appeal, he was required to submit it with his Central Appeal.

"When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection.  If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal."  Id. at § 542.17(b).  The petitioner received written notice in compliance with this regulation, and he was given 15 days to correct the defects.  *Initial Application*, p. 26.

The petitioner resubmitted his Central Appeal, which was received by the Central Office on December 20, 2006.  *Response*, Ex. A, ¶ 32.  In his brief, the respondent asserts that this appeal was rejected because the petitioner failed to provide a copy of the regional appeal *"and/or"* the response, and the petitioner was again instructed to resubmit the appeal in proper form within 15 days of the date of the rejection notice.  Id.

The respondent's brief does not specify whether the second central appeal was rejected for failure to provide a copy of the regional appeal or for failure to provide a copy of the Regional Office's response to that appeal, or both.  Nor does the respondent's brief contain a copy of the Rejection Notice.[2]

I held an evidentiary hearing on May 6, 2009, and I took evidence on this issue.  The evidence shows that the petitioner's second Central Appeal was rejected because he did not submit a copy of the regional appeal *and* he did not submit a copy of the Regional Office's response to the appeal.  *Evidentiary Hearing*, Def. Ex. D[3] and testimony of Forest Kelly.  I specifically asked the petitioner whether he had a copy of his regional appeal at the time he filed his central appeal.  He stated that the regional appeal is submitted to the Regional Office and is not returned to the inmate until the response is issued.  He further stated that the BOP does not make copies of the appeals.  The respondent did not dispute the petitioner's answer.  Therefore, I find that the petitioner was not in possession of, and could not be in possession of, a copy of his regional appeal until he received a copy of the Regional Office's response to his appeal.

---

[2]Had the respondent specified that the second central appeal was rejected because the petitioner failed to comply with his obligation to provide a copy of his appeal, and had I been satisfied that the petitioner was in possession of a copy of his regional appeal, the respondent would have demonstrated that the petitioner did not exhaust his administrative remedies.  On the other hand, if the second central appeal was rejected solely for failure to provide a copy of the Regional Office's response, it was rejected in error because under section 542.18 the petitioner was under no obligation to provide the response.  Indeed, he still had not received the regional response when he submitted his second central appeal.

[3]Exhibit D is the Central Office's second Rejection Notice.  The Rejection Notice is dated April 29, 2009--the date it was printed from the BOP's computer system.  According to Mr. Kelly, the Rejection Notice was issued on December 27, 2006.

Under these circumstances, I cannot conclude that the petitioner failed to exhaust his administrative remedies. Therefore, I turn to the merits of the petitioner's claims.

## B.   Claim Three[4]

In Claim Three, the petitioner asserts that his release date was improperly changed from July 2005 to November 2017. In their briefs, the parties failed to provide a complete accounting of the petitioner's sentence calculation. Consequently, I took evidence on the sentence calculation at the hearing on May 6, 2009. The petitioner's criminal history is summarized as follows:[5]

1.   On June 2, 1972, the petitioner received a 5 year sentence in the United States District Court for the Northern District of Georgia for Interstate Transportation of a Stolen Motor Vehicle. *Response*, Ex. A, ¶ 7; *Evidentiary Hearing*, Def. Ex. I.

2.   While serving that sentence, the petitioner escaped and committed new crimes of Armed Robbery, Possession of Unregistered Firearms, and Bank Robbery. *Response*, Ex. A, ¶ 7. On December 4, 1972, he was sentenced in Virginia state court to 10 years on the Armed Robbery charge. *Response*, Ex. A, ¶ 7; *Evidentiary Hearing*, Def. Ex. N. On December 29, 1972, he was sentenced in the United States District Court for the Eastern District of Virginia to 5 years on the Possession of Unregistered Firearms charge and 5 years on the Bank Robbery

---

[4]I address Claim Three prior to addressing the petitioner's other claims because the facts of Claim Three are helpful in understanding the other claims.

[5]The petitioner disputes many of the respondent's factual statements, but he does not provide any evidentiary support for his version of the facts. I do not consider the petitioner's unsupported factual assertions insofar as they conflict with the respondent's supported factual statements.

charge, each to be served consecutive to the other but concurrent with the Virginia state sentence. *Response*, Ex. A, ¶ 7; *Evidentiary Hearing*, Def. Exs. J and K.

3.   On March 6, 1973, the petitioner was sentenced in the United States District Court for the District of South Carolina (Case No. 72-245) to 20 years for Bank Robbery.  That sentence was to be served consecutive to any other federal sentence. *Response*, Ex. A, ¶ 7; *Evidentiary Hearing*, Def. Ex. L.

4.   On November 20, 1973, while serving his Virginia state sentence, the petitioner escaped from the custody of the Virginia Department of Corrections.  He was captured in January 1974 and convicted of Kidnaping (Case No. 74-16-D) in the United States District Court for the Western District of Virginia. *Response*, Ex. A, ¶ 8.  On October 30, 1974, he was sentenced to 12 years to be served concurrently with any other sentence and was placed in federal custody.  Id.; *Evidentiary Hearing*, Def. Ex. M.

5.   On May 7, 1979, the petitioner was paroled. *Response*, Ex. A, ¶ 9.  In April 1980, while on parole, the petitioner was arrested in Atlanta, Georgia.  On September 8, 1980, a warrant was issued by the United States District Court for the District of South Carolina for his arrest for violating the terms of his parole as a result of this arrest.  The warrant was executed on October 17, 1980, and the petitioner was returned to federal custody.  Id. at ¶ 10.

6.   On June 19, 1981, the petitioner received a 10 year sentence in the United States District Court for the Eastern District of Virginia (Case No. CR-81-00076A) for Impeding an Official in the Performance of His Duties with a Dangerous Weapon.  The sentence was to begin at the expiration of any other sentence imposed. *Response*, Ex. A, ¶ 12; *Evidentiary Hearing*, Def. Ex. Q.

7.   On January 15, 1982, the United States District Court for the Eastern District of Virginia sentenced the petitioner (Case No. CR-81-00027A) to 6 years for Conspiracy to Impede and Injure Officers (Count 1); 5 years each for three counts of Mailing Threatening Communications (Counts 2, 3, and 5); and 5 years each for two counts of Influencing an Officer with Threats (Counts 4 and 6).  The sentences on Counts 1, 2, and 3 are to run consecutively to one another and to any sentence then being served.  The sentences on Counts 4, 5, and 6 are to run concurrently with Counts 1, 2, and 3.  *Response*, Ex. A, ¶ 13; *Evidentiary Hearing*, Def. Ex. R.

8.   On November 18, 1990, the petitioner committed the offense of Attempted Escape and Making False Statements.  *Response*, Ex. A, ¶ 14.  On October 19, 1992, he was sentenced in the United States District Court for the District of Connecticut (Case No. 3:92CR00010(AHN)) to 41 months, to be served concurrently with the sentences then being served.  Id.; *Evidentiary Hearing*, Def. Ex. T.  He completed this sentence on October 10, 1995, via good conduct time release, but was not actually released from custody due to the remaining time left on his other sentences.  *Response*, Ex. A, ¶ 14.

9.   On June 30, 1995, the petitioner was convicted of Conspiracy to Threaten to Assault and Murder United States Judicial Officials.  *Response*, Ex. A, ¶ 15.  On March 13, 1997, he was sentenced in the United States District Court for the District of Oregon (Case No. CR96-284RE) to 60 months, to be served consecutive to Case Nos. 72-245, 81-00076A and 81-00227A.  Id.; *Evidentiary Hearing*, Def. Ex. U.

The respondent's witness, Forest Kelly, provided testimony as to how the BOP calculated the petitioner's sentence.  The testimony was cumbersome in view of the petitioner's extensive criminal history.

Based on the record before me, including the briefs, the exhibits, and the testimony of Mr. Kelly and the petitioner, I find that the petitioner's sentence is properly calculated as follows:

1.   Sentences imposed prior to November 1, 1987, are termed "old law" sentences. Sentences imposed after November 1, 1987, are termed "new law" sentences and cannot be aggregated with "old law" sentences.  If a "new law" sentence is to be served consecutive to an "old law" sentence then being served, the "new law" sentence acts as a detainer until the inmate is released from the preceding sentence.  *Response*, Ex. A, ¶ 5.

2.   The petitioner's first federal sentence was for 5 years in the Northern District of Georgia, commencing June 2, 1972.  He served 45 days before he escaped.  His sentence became inoperative during the 165 days of his escape status--from July 17, 1972, until December 28, 1972.

3.   The petitioner's next federal sentence was for 10 years (3,650 days) imposed by the Eastern District of Virginia.  That sentence commenced on December 29, 1972, and ran concurrent with his 10 year Virginia state sentence, while he was in Virginia state custody.  It also ran concurrent to the 5 year sentence imposed by the Northern District of Georgia.[6]

---

[6]The Judgement and Commitment Orders from the Eastern District of Virginia do not address whether the 10 year sentence was to run concurrently or consecutively to the 5 year Northern District of Georgia sentence.  Under the old law, sentences run concurrently unless ordered to run consecutively.

4.    The petitioner's first sentence, imposed by the Northern District of Georgia, recommenced on December 29, 1972.  The remainder of the 5 year sentence from the Northern District of Georgia was absorbed into the 10 year sentence from Eastern District of Virginia.

5.    Thus far, the petitioner's term can be summarized as follows: it began on June 2, 1972; it included the 45 days served in the Northern District of Georgia and the 3,650 day sentence in the Eastern District of Virginia for a total term of 3,695 days; and it was not operative between July 17, 1972, and December 28, 1972.

6.    On March 6, 1973, the petitioner was sentenced to 20 years (7,300 days) by the District of South Carolina, to run consecutively to his Eastern District of Virginia sentence. When added to his previous term of 3,695 days, he then had a total term of 10,995 days.

7.    When the petitioner escaped state custody from the State of Virginia on November 20, 1973, his federal sentence again became inoperative for 57 days--from November 21, 1973, until January 16, 1974.  His federal sentence recommenced on January 17, 1974.

8.    On October 30, 1974, the petitioner received a 12 year sentence in the Western District of Virginia, to be served concurrently to his previous sentences.  That sentence was absorbed in its entirety by the previous sentences and does not impact the computation of his federal sentence.

9.    At this point, the petitioner was serving a 10,995 day term beginning June 2, 1972, with the two periods of inoperative time (totaling 222 days).  In addition, the petitioner was credited for time spent in federal presentence custody from May 26, 1971, to June 21, 1971, and from April 4, 1972, to June 1, 1972 (totaling 86 days).

10.   To calculate the expiration date of the petitioner's full term at this point, the 10,995 days are added to June 2, 1972, for an expiration date of July 10, 2002.  The 86 days of presentence jail credit are subtracted from July 10, 2002, resulting in an expiration date of April 15, 2002.  The 222 days of inoperative time are added, resulting in a full term expiration date of November 23, 2002.[7]

11.   The petitioner was paroled from federal custody on May 8, 1979, with 8,600 days remaining until his full term expiration date of November 23, 2002.[8]  He was rearrested on October 17, 1980, for a parole violation.  He was returned to federal custody on October 17, 1980, and began serving the 8,600 days remaining on his term.

12.   On June 19, 1981, he received a sentence of 10 years (3,650 days) in the Eastern District of Virginia to run consecutive to any other term.  On January 15, 1982, he received a sentence of 16 years (5,840 days) in the Eastern District of Virginia to run consecutive to any other term.  Those sentences run consecutive to the 8,600 days remaining on the sentences he incurred prior to violating his parole.  These sentences total 18,090 days.

13.   The petitioner's full term expiration date for these sentences is calculated by adding the 18,090 days to October 17, 1980, the date his federal sentence recommenced.  See page 12 ¶7, supra.  This results in a full term expiration date of April 28, 2030.[9]

---

[7]Mr. Kelly testified that the BOP has calculated the full term expiration date to be November 29, 2002.  The evidence does not support that calculation, however.

[8]Mr. Kelly testified that the petitioner was paroled with 8,606 days left until his full term expiration date of November 29, 2002.  Again, the evidence does not support that calculation.

[9]Mr. Kelly testified that the BOP has calculated the expiration full term date as May 9, 2030.  The evidence does not support that calculation.

14.   The petitioner can earn statutory good time at a rate of 10 days for each month of the "old law" sentence.  The total possible statutory good time the petitioner may be awarded is 5,947 days.  In addition, the petitioner can earn 3 to 5 days of extra good time per month based on work performance, work assignments, and special awards.  He has the potential to earn up to 186 days of extra good time.  Deducting the total potential good time (6,133 days) from the full term expiration date results in a projected satisfaction date of July 12, 2013.[10]

15.   On October 19, 2002, the petitioner received a 41 month sentence in the District of Connecticut to run concurrently with his previous sentences.  That sentence was absorbed in its entirety by the old law sentences and did not affect the full term expiration date.

16.   On March 30, 1995, the petitioner received a 60 month (1,825 day) sentence in the District of Oregon.  The Oregon sentence is under the Sentencing Reform Act (new law) and cannot be aggregated with the old law sentences.  It begins on satisfaction of the old law term. The petitioner is eligible for a total of 235 days good conduct time on his new law sentence. Assuming that the new law sentence will begin to run on the petitioner's projected satisfaction date of July 12, 2013, and adding the 1,825 days of the Oregon (new law) sentence, then subtracting 235 days for potential good conduct, results in a projected satisfaction date for his new law term of November 17, 2017.[11]

Considering all of the evidence pertaining to the petitioner's sentences and sentence calculations, I find that the full term expiration dates and projected satisfaction dates calculated

---

[10]Mr. Kelly testified that the BOP has calculated the petitioner's projected satisfaction date to be July 24, 2013.  The evidence does not support that calculation.

[11]Mr. Kelly testified that the BOP has calculated this projected satisfaction date to be November 30, 2017.  The evidence does not support Mr. Kelly's calculation.

by the BOP are one-and-one-half to two weeks longer than the actual dates.  Accordingly, I

respectfully RECOMMEND that the Application be GRANTED as to Claim Three and that the

BOP be directed to recalculate the petitioner's sentence consistent with this Recommendation.

### C.   Claim Two

In Claim Two, the petitioner alleges that the United States Parole Commission ("USPC")

erred when it took away his parole "street time."  The USPC is not a party to this action, and the

BOP does not have authority to remedy decisions made by the USPC.  *Response*, Ex. A, ¶ 23.

Accordingly, I respectfully RECOMMEND that Claim Two be DISMISSED WITHOUT

PREJUDICE.

### D.   Claim One

In Claim One, the petitioner alleges that the Commonwealth of Virginia has lodged an

illegal detainer against him.[12]  The Virginia Department of Corrections submitted a formal

request to have a warrant for escape and completion of the petitioner's Virginia sentence lodged

as a detainer in its favor as early as June 3, 1982.  *Response*, Ex. A, ¶ 25.  In a letter dated

September 20, 1983, the Commonwealth of Virginia stated:

> Inmate escaped our custody on November 30, 1973, while
> assigned to the Buchanan Correctional Unit, Commonwealth of
> Virginia Department of Corrections.  He was serving a 10 year
> felony sentence for Robbery.  On the date of escape, he still owed
> approximately 5 years, 4 months and 7 days.  File these as
> detainers for Davis' unserved time for Virginia Department of
> Corrections.  Be assured that the Virginia Department of
> Corrections will take whatever steps are necessary to return Davis
> to Virginia.  Ref: Melvin Lee Davis VSP#101061.

---

[12]A detainer "is a request filed by a criminal justice agency with the institution in which a
prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be
advised when the prisoner's release is imminent."  Fex v. Michigan, 507 U.S. 43, 44 (1993).

15

<u>Id.</u> at ¶ 27.

In a letter dated November 1, 2005, the Commonwealth of Virginia notified the BOP that it was revising its detainer to reflect that the petitioner is wanted for the time left on his original felony sentence of 10 years, of which he has approximately 5 years, 4 months, and 7 days remaining.  The Commonwealth of Virginia requested that the BOP notify it approximately 30 days prior to the petitioner's release and it will extradite him.  <u>Id.</u> at ¶ 28.

I find that this court has jurisdiction over Claim One.[13]  <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 498-99 (1973) (holding that a state prisoner wishing to challenge a detainer may file a habeas petition either in his current state of incarceration or in the state which lodged the detainer against him); <u>see Crowley v. Graham</u>, 172 F.3d 62, 1999 WL 72123 at *1 (10th Cir. Feb. 16, 1999) (holding <i>sua sponte</i> that a federal district court was without jurisdiction to entertain habeas petition seeking dismissal of state detainer because petitioner failed to name as respondent the warden of the federal prison where he was held).

The petitioner argues that he has already served his Virginia sentence.  <i>Application</i>, pp 3, 13.  He asserts that he challenged the detainer pursuant to the Interstate Agreement on Detainers Act ("IADA") and did not receive a response from Virginia authorities within the 180 day time limit.  <u>Id.</u> at p. 13.  However, the IADA applies only to untried criminal charges; it does not apply to a detainer that is issued to ensure completion of a sentence which was cut short by an escape.[14]  <u>Crowley</u>, 172 F.3d 62, 1999 WL 72123 at *1.

[13]I ordered the parties to submit additional briefing on this issue [Doc. #40], and I held a hearing on it on May 15, 2009 [Doc.#52].

[14]The petitioner does not challenge untried charges based on the escape, and it does not appear from the record that any exist.

16

The petitioner argues that he served his Virginia state sentence concurrently with his federal sentence.  "However, the question of whether a prisoner should receive credit against his state sentence for time served for a federal sentence in a federal institution is a question of state law that should first be raised with the [Virginia] courts."  Id.  Under Virginia Code § 8.01-654, the petitioner may challenge "detention without lawful authority" even though "the sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by the petitioner."  Thus, the petitioner has an available state remedy, and he must exhaust the state remedy before bringing a federal habeas corpus petition.  Montez, 208 F.3d at 866.

I respectfully RECOMMEND that Claim One be DISMISSED WITHOUT PREJUDICE for failure to exhaust available state remedies.

### III.  CONCLUSION

I respectfully RECOMMEND that the Application be DISMISSED WITHOUT PREJUDICE as to Claims One and Two.

I FURTHER RECOMMEND that the Application be GRANTED as to Claim Three and that the BOP be directed to recalculate the petitioner's sentence consistent with this Recommendation.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives de novo review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

17

In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections

to this recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review.  United States v. One Parcel of Real Property, 73

F.3d 1057, 1060 (10th Cir. 1996).

      Dated May 26, 2009.

                         BY THE COURT:

                          s/ Boyd N. Boland
                         United States Magistrate Judge