IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00056-MSK-BNB

MELVIN LEE DAVIS,

       Petitioner,

v.

R. WILEY,

       Respondent.

_____

**OPINION AND ORDER ADOPTING RECOMMENDATION IN PART
AND DENYING PETITION**
_____

**THIS MATTER** comes before the Court pursuant to the Recommendation of the United States Magistrate Judge dated May 26, 2009 **(# 58)** that the Petitioner's Petition for Writ of *Habeas Corpus* **(# 6)** pursuant to 28 U.S.C. § 2241 be granted in part and denied in part. Both parties filed timely Objections **(# 61, 62)** to the Recommendation. In addition, the Petitioner filed a series of notices **(# 59, 60, 63, 64, 65, 66, 67)** that, in large part, repeatedly invoke a common theme: that prison officials had improperly withheld certain mailings to him from the Respondent, thus depriving him of advance notice of certain exhibits that were to be presented at evidentiary hearings before the Magistrate Judge.[1]

---

[1] Docket # 59 is a "Motion to Supplement New Information," which notes the prison's rejection of the material addressed to the Petitioner and requests that the Court consider "exhibits numbers six (6) and seven (7) as stated respectfully. These exhibits and documents . . . are the same ones the U.S. Attorney's Office sent to the United States District Court to assist in its decision." Because it appears that the material referenced by the Petitioner was considered by

1

Neither party appears to object to the bulk of the Magistrate Judge's thorough factual findings and thus, except as noted below, the Court adopts them.

In summary, the Petitioner raises three claims: (i) that the Bureau of Prisons is presently miscalculating his release date; (ii) that the United States Parole Commission erred in revoking his "street time"; and (iii) that the State of Virginia has lodged an illegal detainer against him based on a state sentence he claims has been discharged. After carefully unraveling the Petitioner's lengthy criminal history and record of undischarged sentences, the Magistrate Judge found that the Bureau of Prisons' calculation that his sentence expired on November 30, 2017 was incorrect by approximately 13 days, and thus, recommended that the Petition be granted insofar as the Bureau of Prisons should be required to recalculate the Petitioner's sentence. As

---

the Magistrate Judge, notwithstanding the fact that the Petitioner had not had an opportunity to review it prior to the evidentiary hearing, this motion is denied as moot.

Docket # 60 is a second Motion to Supplement, purporting to submit a "signed statement by two prison guards which supports the Petitioner's allegations." (In Docket # 59, the Petitioner states that this document contains a statement by the guards that "anybody can see you should have been released, but it's not ADX's position to assist you in court, to obtain your release.") However, the Court's records do not indicate that any such attachment was included with the Petitioner's motion. Accordingly, this motion is denied as moot. Even assuming the document described by the Petitioner had been submitted, the Court would nevertheless find it irrelevant. There is no suggestion that the opinions of "prison guards" are of any relevance to the issue of whether the Petitioner's sentence was properly computed by the Bureau of Prisons.

The remaining docket entries – # 63 through # 67 – simply repeat the refrain that prison officials improperly returned the exhibits sent to the Petitioner by the Respondent. Beginning in Docket # 64, the Petitioner raises an additional issue – that he wrote in 2005 to the U.S. District Judge who sentenced him in 1974, requesting clarification as to whether the Petitioner was in Virginia's custody at the time he was sentenced and turned over to federal officials, and the District Judge's somewhat incongruous reply that "[my] sentence was to run concurrent with your state time. I believe you have completed that sentence and released from confinement, but are now being confined for later offenses." Even if the Court were to deem the record supplemented with this exchange, the result of this proceeding would not be different. The Magistrate Judge's conclusion regarding the Virginia detainer is based on a procedural flaw – the Petitioner's failure to exhaust that issue in Virginia – not on any factual conclusion that the Virginia sentence remains undischarged.

to the other two claims, the Magistrate Judge recommended that the "street time" claim be denied because the Parole Commission is not a party to this action, and that the detainer claim be denied because the Petitioner had not exhausted the remedies available to him to challenge the issuance of that detainer under Virginia law.

Both parties filed timely Objections. The Respondent objects to that portion of the Recommendation that concludes that the release date calculated by the Bureau of Prisons is incorrect by approximately 13 days. The Respondent contends that the Magistrate Judge erred by not accounting for leap years in his calculation, and by failing to account for the day of commitment when calculating sentence durations. The Respondent contends that, when these errors are corrected, it sentence calculation date is correct.

The Petitioner's objections encompass two major issues: (i) the Magistrate Judge erred in failing to credit 790 days of good time earned by the Petitioner, and also failed to credit him for an unspecified amount of "lump sum award" good time the Petitioner claims to have earned[2]; and (ii) with regard to the detainer issue, the Petitioner states that because he was transferred from Virginia custody to federal custody in October 1974, his Virginia sentence should be deemed to continue to run concurrently with his federal sentence, and that "exhausting state remedies (which none apply) is [not] required" and the existing Virginia detainer runs afoul of the principles in *Braden v. 30th Judicial Circuit*, 410 U.S. 484 (1973).     Pursuant to Fed. R.

---

[2]The Petitioner states that "the BOP has records of both these good times (as Petitioner has seen them reviewing his prison file), but refuses to give Petitioner a copy nor have this information been given to the Court." In other words, the record before this Court contains no evidence of the Petitioner having earned the good time he claims. The Petitioner contends that the Bureau of Prisons' failure to produce this material is in violation of the Court's order that all relevant materials be produced.

3

Civ. P. 72(b), the Court reviews the objected-to portions of the Recommendation *de novo*. *See also* 28 U.S.C. § 636(b)(1).

Turning first to the Respondent's Objections, after carefully reviewing the Magistrate Judge's calculations, the Court finds that the Respondent is correct and the Magistrate Judge's conversion of years to days failed to take into account leap years. *Yokley v. Belaski*, 982 F.2d 423, 424-25 (10th Cir. 1992) (a sentence of years runs from the calendar date imposed to the same calendar date in the following years; during leap years, this means 366 days of imprisonment rather than 365). Thus, for example, when the Magistrate Judge converted the Petitioner's December 29, 1972 sentence of 10 years to days, the Magistrate Judge computed the sentence as 3,650 days. In actuality, the 10 year period between December 29, 1972 and December 29, 1982 encompasses two leap years – 1976 and 1980 – and thus, the Petitioner's 10 year sentence was actually 3,652 days. Similarly, when converting the Petitioner's 20 year sentence imposed on March 6, 1973 to days, the Magistrate Judge multiplied 20 by 365, yielding 7,300 days. However, a sentence from March 6, 1973 to March 6, 1993 includes the leap years of 1976, 1980, 1984, 1988, and 1992, making that 20 year sentence the equivalent of 7,305 days. This 7-day difference fully accounts for the discrepancy noted by the Magistrate Judge between his own calculation of the Petitioner's release date of November 23, 2002 and the Bureau of Prison's calculation of a release date six days later, on November 29, 2002.[3] It appears that the

---

[3]The Court understands the Respondent's argument that the Bureau of Prisons reduces the calculated release date by one day to account for the calculation's failure to count the first day of an inmate's custody – *e.g.* an inmate beginning a seven-day sentence on July 1 serves his final day and is presumably released at the end of July 7, but attempting to compute his release date by adding 7 days to July 1 yields July 8. Whether this is a mathematically-correct adjustment is not entirely, but if the Bureau of Prisons is prepared to hasten the Petitioner's release date by one day over what it might otherwise be calculated to be, the Petitioner can

4

Magistrate Judge's omission of leap year days affected his other calculations as well.  As a result, the Court finds that the Respondent's Objections are meritorious, and, once augmented with the inclusion of appropriate leap year days, it appears that there is no actual disparity between the release date calculated by the Bureau of Prisons and that found to be appropriate by the Magistrate Judge's otherwise unimpeachable[4] calculations.

The Petitioner's Objections also raise an issue with the Magistrate Judge's reasoning. The Magistrate Judge credited the Petitioner with 6,133 days of "good time" credits against his "old law" sentence, and an additional 235 days of "good time credits against his "new law" sentence.  However, the Petitioner contends that the Magistrate Judge erred in not affording him an additional 790 days of good time credits for the 6 year, 6 month, 28 day period the Petitioner served from June 2, 1972 to the time he was paroled on May 7, 1979.  (The parole was revoked and the Petitioner resumed serving his sentences on October 17, 1979).

The Court finds that the Petitioner is mistaken.  It is readily apparent that, when calculating the total of 6,133 days of good time available to the Petitioner on his "old law" sentence (*i.e.* the entire 10,995-day period of cumulative sentences imposed prior to November 1, 1987), the Magistrate Judge made his good time calculation on the entire "old law" sentence, rather than calculating good time separately for pre-parole and post-parole sentences.[5]  Thus, the

---

hardly complain.

[4]By this adjective, the Court both compliments the Magistrate Judge for deftly handling a tangled criminal record and notes that the Petitioner has not specifically objected to any of the Magistrate Judge's findings or calculations with regard to the length of his sentences and the amount of time served to date, with the sole exception discussed herein.

[5]Admittedly rough math explains: the entire 10,995-day old law sentence converts to roughly 366 months (at a rate of 30 days per month).  At a rate of 10 days of good time per month, a total of 3,660 days of good time would be earned on the entire old law sentence.  In

Magistrate Judge's calculation of 6,133 days of good time necessarily included the 790 days of pre-parole good time the Petitioner claims.

The Petitioner's additional contention that he is also entitled to an unspecified amount of "lump sum" good time credit (allegedly earned for "saving the lives of two prison guards and officiating sports, etc.) is, by the Petitioner's own admission, a claim that finds no documentary support in the record. Although the Petitioner insists that the Bureau of Prisons is withholding documents that would prove this contention, the Court finds such an assertion to be unaccompanied by any credible evidence in the record. Without such evidence, the Court does not find that the Magistrate Judge's refusal to include such unspecified good time credit was error.[6]

Neither party objects to that portion of the Magistrate Judge's Recommendation that found the Petitioner's complaint regarding "street time" to be without merit, and thus, the Court adopts it for the reasons given.

Finally, the Petitioner argues that the Magistrate Judge erred in finding that he had failed to exhaust remedies available under Virginia law to challenge the detainer issued against him.

---

addition, an inmate can earn an additional 5 days per month of extra good time for various reasons. Over 366 months, this additional 5 days per month would add another 1,830 days for a grand total of 5,490 days of good time on the entire old-law sentence. The Magistrate Judge's crediting of even more time – 6,133 days – necessarily suggests that the Magistrate Judge based his calculations on the entire old-law sentence.

[6]The Court notes that it appears that the Magistrate Judge appears to have given the Petitioner credit for all possible good time that could be earned by an inmate, without regard to whether the Petitioner actually earned it. Thus, even assuming the Petitioner did indeed earn lump sum good time, the Magistrate Judge's award of the maximum possible good time credit to him would necessarily have accounted for any lump sum good time award the Petitioner actually received.

The Petitioner's Objections contend that he did indeed discharge the Virginia sentence and asserts, conclusorily, that no remedy is available to him under Virginia law. The Magistrate Judge found that the Petitioner is entitled to challenge the Virginia detainer under Virginia Code § 8.01-654, and the Petitioner's simple nay-saying, without citation to contrary law, is insufficient to demonstrate that the Magistrate Judge's conclusion was incorrect.[7]

Accordingly, the Respondent's Objections **(# 61)** are **SUSTAINED** and the Petitioner's Objections **(# 62)** are **OVERRULED**. The Court **ADOPTS IN PART** the Magistrate Judge's Recommendation, insofar as the Court agrees that the Petitioner's first and second claims – relating to his detainer and "street time" claims –  should be denied, but the Court declines to adopt that portion of the Recommendation that recommends that the Petitioner's third claim – that his release date was improperly calculated – be granted, and this Court instead finds that claim should also be denied. The Petition **(# 6)** is **DENIED** in its entirety. To the extent it is necessary for the Court to address them, the Court **DENIES** the Petitioner's Motions to Supplement **(# 59, 60)** as moot.

In the interests of efficiency, the Court has *sua sponte* considered whether a Certificate of Appealability should issue pursuant to 28 U.S.C. § 2253(c)(1). Although it does not appear that such a Certificate is strictly necessary for § 2241 petitioners in federal custody, such a Certificate may be necessary where, as here, a portion of the Petition addresses process issued by a state court – here, the Virginia detainer. *See Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000).

---

[7]Even assuming that Virginia state law provides no remedy, it appears that the Petitioner could seek relief via a federal *habeas* petition in federal court in Virginia. *See e.g. Word v. State of North Carolina*, 406 F.2d 352, 356 (4th Cir. 1969) (prisoners housed in Virginia and subject to detainers filed by North Carolina could use federal *habeas* petition to attack the North Carolina convictions, but had to do so in North Carolina's federal court, not Virginia's).

Having considered the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000), the Court finds that none of the issues raised by the Petitioner warrant a Certificate, and accordingly, a Certificate of Appealability is **DENIED**.

Dated this 28th day of January, 2010

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge